IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

ZACHARY IMEL,

    Plaintiff,

    v.

FORTE PRODUCTS,

    Defendant.

Case No. 19-4107-JWB-ADM

## MEMORANDUM AND ORDER

    This matter comes before the court on Defendant's Motion to Compel. (ECF No. 31.) Plaintiff Zachary Imel asserts that his former employer, Defendant Forte Products ("Forte"), unlawfully discriminated against him on the basis of his disability when the company terminated his employment, allegedly for a series of "no-call, no-shows" after Mr. Imel sustained serious injuries from a fireworks accident resulting in the amputation of his hand. Mr. Imel brings claims under the Americas with Disabilities Act ("ADA") for: (1) disability discrimination in Forte's termination of Mr. Imel's employment and failure to reinstate him; and (2) retaliation insofar as Forte allegedly refused to hire Mr. Imel for other open positions for which he was a qualified applicant. Forte asks the court to compel Mr. Imel to respond to requests for the production of documents ("RFPs") seeking his medical records and deposits into his bank account.

    The court largely overrules Mr. Imel's relevance objection lodged in response to these RFPs. Forte sets forth multiple reasons why these documents are relevant, and Mr. Imel has not shown otherwise. Instead Mr. Imel largely relies on case law addressing summary judgment motions, FED. R. CIV. P. 35 examinations, or the psychotherapist-patient privilege—cases involving a different legal standard than a pure relevance determination on a motion to compel.

Mr. Imel also takes a more narrow view of his case than the claims he has pleaded. In short, he has not convinced the court that the RFPs seek wholly irrelevant information. The court sustains a portion of Mr. Imel's relevance objection as to Forte's request for production of financial documents in that the court will allow Mr. Imel to make partial redactions to this material, as set forth in this order. For these reasons, explained in greater detail below, Forte's motion to compel is granted in part and denied in part.

## I.   BACKGROUND

According to the complaint, Mr. Imel worked for Forte in the summer of 2018 in a position that required him to push a button with his hand. (ECF No. 1, at ¶ 6.) Forte states that Mr. Imel was a "Class C RTM" and closed-mold trim operator at its Cherryvale, Kansas, manufacturing plant. (ECF No. 32, at 1.) Mr. Imel alleges that on July 1, 2018, his eyes became irritated by a chemical at work, a potential worker's-compensation injury. (ECF No. 1, at ¶ 9.) When Mr. Imel told his supervisor about the injury, Mr. Imel's supervisor sent him home. (*Id.*) According to Forte, Mr. Imel took a personal day on July 2. (ECF No. 4, at ¶ 22.) On July 4, Mr. Imel sustained significant injuries when a firework exploded in his hand during a Fourth of July gathering with his family. (ECF No. 1, at ¶ 12.) Forte had scheduled Mr. Imel to work the third shift that night, but the complaint alleges his family transported him to Coffeyville Regional Medical Center, which ultimately transferred Mr. Imel to St. Francis Hospital in Tulsa, where he underwent surgery to amputate his hand. (*Id.* at ¶ 14.)

Mr. Imel alleges that he asked his grandmother to call his employer to provide notice that he would miss his shift because of the injuries he sustained, which she did. (*Id.* at ¶. 15.) Forte's answer states that Mr. Imel's grandmother left a voicemail message for Forte's HR specialist around 11:23 p.m. that night. (ECF No. 4 at ¶ 15.) According to the complaint, the hospital

discharged Mr. Imel on July 6, with no work restrictions. (ECF No. 1, at ¶ 6.) But Forte maintains it did not know the extent of Mr. Imel's injuries when it terminated his employment on July 9 because he had accumulated more than three "attendance occurrences/points" under the company's attendance policy—one point for July 2; one point for July 4; two points for July 5; and two points for July 8. (ECF No. 4, at ¶ 20, ¶ 34.)

According to Mr. Imel, Forte did not ask him for work-release paperwork. But Mr. Imel contends that he met with Forte's HR specialist on July 6, or July 13, to provide her with a copy of his discharge summary and follow-up instructions. (*See generally* ECF No. 32-7.) Forte denies that Mr. Imel provided the HR specialist with this paperwork. Forte contends that its HR director met with Mr. Imel on August 31, and told him she would help him get back to work if he provided her with documentation from Mr. Imel's doctor. (ECF No. 4, at ¶ 22.) According to Mr. Imel's complaint, he applied for other openings with Forte after the company terminated his employment, but the company would not hire him even though he was qualified. (ECF No. 1, at ¶¶ 27-30.) Mr. Imel brings claims under the ADA for disability discrimination in (1) terminating his employment because of an alleged disability and for failing to reinstate his employment upon requests, and (2) retaliation for failing to rehire him when he applied for other positions. (*Id*. at ¶ 40.) Forte denies these claims.

The present dispute involves Forte's RFPs seeking medical records and bank statements. Specifically, RFP Nos. 2, 3, 6, and 8 ask Mr. Imel to produce: (1) a complete copy of Mr. Imel's medical records and billing records for any hospitalization, emergency air transportation, medical services, care or treatment, including any follow-up services, that he received on or after July 4, 2018, related to his injury; (2) any documents Mr. Imel received on or after July 4, from any hospital, emergency air transportation service, doctor or other licensed health care professional

related to the services provided by those entities including any follow-up medical services related to Mr. Imel's injury; (3) documents provided to Mr. Imel on behalf of any hospital, doctor, or other licensed health care professional at or around the time Mr. Imel was discharged from St. Francis Hospital on July 6, or at any time thereafter, including any discharge instructions or instructions regarding Mr. Imel's ability to return to work; and (4) any documents Mr. Imel received from any doctor or licensed health care professional on or after July 4, to evidence that Mr. Imel was under their care on July 4, 5, 8, 9, 10, 11 and/or 12, and/or the date when he could return to work, including documents that evidence or reflect the date when he received the documents.  (ECF No. 31-2, at 1-4.)  Mr. Imel asserted a relevance objection in response to the RFPs but produced a February 20, 2020, printout of a four-page discharge summary from St. Francis and four pages of highly redacted progress and emergency department notes for July 4-6.  (ECF No. 33-1.)  In response to the motion to compel, Mr. Imel maintains that further responsive documents are not relevant.

Forte also seeks an order compelling Mr. Imel to produce documents responsive to RFP No. 27, which seeks a copy of bank statements for any bank accounts Mr. Imel maintained in his own name or jointly with another person that reflects any deposits after July 9, 2018, including any deposit slips or receipts evidencing the deposits.  (*Id.* at 9.)  Mr. Imel asserted a relevance objection in response to the RFP, stating that the request was too broad, but he stated he would produce 1099s and W-2s.  In response to the motion to compel, Mr. Imel continues to rely on the relevance objection.

## II.     LEGAL STANDARD

"Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case."  FED. R. CIV. P. 26(b)(1).  In

other words, considerations of both relevance and proportionality now expressly govern the scope of discovery. FED. R. CIV. P. 26(b)(1) advisory committee's note to the 2015 amendment. Relevance is "construed broadly to encompass any matter that bears on, or that reasonably could lead to other matter that could bear on, any issue that is or may be in the case." *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 (1978); *see Rowan v. Sunflower Elec. Power Corp.*, No. 15-9227, 2016 WL 3745680, at *2 (D. Kan. July 13, 2016) (applying *Oppenheimer* after the 2015 amendment); *see also Kennicott v. Sandia Corp.*, 327 F.R.D. 454, 469 (D.N.M. 2018) (analyzing the 2015 amendment and concluding that it did not change the scope of discovery but clarified it, and therefore *Oppenheimer* still applies).

When a responding party fails to make a disclosure or permit discovery, the discovering party may file a motion to compel. FED. R. CIV. P. 37(a). The party seeking discovery bears the initial burden to establish relevance, but it does not bear the burden to address all proportionality considerations. *See Landry v. Swire Oilfield Servs.*, L.L.C., 323 F.R.D. 360 (D.N.M. 2018) (discussing the effect of the 2015 amendment on the party seeking discovery); *Gen. Elec. Capital Corp. v. Lear Corp.*, 215 F.R.D. 637, 640 (D. Kan. 2003) (stating the moving party bears the initial burden to demonstrate relevance); *Hofer v. Mack Trucks, Inc.*, 981 F.2d 377, 380 (8th Cir. 1992) ("Some threshold showing of relevance must be made before parties are required to open wide the doors of discovery and to produce a variety of information which does not reasonably bear upon the issues in the case."); FED. R. CIV. P. 26(b)(1) advisory committee's note to the 2015 amendment (noting that the amendment "does not place on the party seeking discovery the burden of addressing all proportionality considerations" and that "the parties' responsibilities [on a discovery motion] would remain the same as they have been").

Relevance is often apparent on the face of the request. *See Johnson v. Kraft Foods N. Am., Inc.*, 238 F.R.D. 648, 652–53 (D. Kan. 2006). When the discovery sought appears relevant on its face, or the discovering party has established relevance, the party resisting discovery bears the burden to support its objections. *See Ehrlich v. Union Pac. R.R. Co.*, 302 F.R.D. 620, 624 (D. Kan. 2014) (holding the party resisting discovery bears the burden to show why a discovery request is improper); *Martin K. Eby Const. Co. v. OneBeacon Ins. Co.*, No. 08-1250-MLB-KGG, 2012 WL 1080801, at *3 (D. Kan. Mar. 29, 2012) ("Once this low burden of relevance is established, the legal burden regarding the defense of a motion to compel resides with the party opposing the discovery request."). The party resisting discovery does not carry this burden by asserting "conclusory or boilerplate objections that discovery requests are irrelevant, immaterial, unduly burdensome, or overly broad." *Sonnino v. Univ. of Kan. Hosp. Auth.*, 221 F.R.D. 661, 670 (D. Kan. 2004). Rather, an objecting party "must specifically show in its response to the motion to compel, despite the broad and liberal construction afforded by the federal discovery rules, how each request for production or interrogatory is objectionable." *Id.* at 670-71.

### III.   RELEVANCE OF MR. IMEL'S MEDICAL RECORDS

Forte asks the court to compel Mr. Imel to provide documents responsive to RFP Nos. 2, 3, 6, and 8 (summarized in more detail above), which largely concern Mr. Imel's medical records from July 4, 2018, on. Forte explains that the documents are relevant for several reasons, including that they go to essential elements of Mr. Imel's claims. Forte contends the medical records are relevant to assessing the timing of his injury and whether he or his grandmother could have called in prior to 9 p.m. on July 4 in order to comply with Forte's attendance policy by providing notice to Forte prior to the start of his shift. Forte also argues that these records bear on Mr. Imel's ability to call in for his subsequent missed shifts later that week. In other words, Forte contends that the

6

information could bear on the elements of disability and whether he was able to perform the essential functions of his job by calling in to report the missed shifts. Forte also argues that Mr. Imel's medical records are relevant because he later filed for Social Security Disability Insurance ("SSDI") benefits, which would have required Mr. Imel to represent that he was unable to work due to his medical condition and that the condition was expected to last for a year. Because he submitted medical records in support of the application, Forte contends that his medical records would tend to support or refute an essential element of his claims—whether he was able to work. Forte also contends that the records could possibly go to Mr. Imel's credibility and could bear on if or when he would be released to return to work, which would be directly relevant to Mr. Imel's claim for backpay because, even if he were to prevail, he would not be entitled to backpay before he was able to return to work. Forte's explanation of relevance easily meets the threshold showing of relevance required by the Federal Rules, and so Mr. Imel bears the burden to support his relevance objection.

Mr. Imel discusses the records in two categories: his mental health records (discussed further below) and all other medical records. In a nutshell, Mr. Imel contends that when an employer terminates employment because of attendance, the employee's medical records are not "at issue"—just those documenting the injury in question. In support of this proposition, Mr. Imel cites an employment case from another district for its proposition that a reasonable accommodation could constitute a finite extension for medical leave and, in that respect, the crucial question was not how long it took an employee to recover but what the employer knew and expected of the employee when it decided to terminate his employment. *See Aspen v. Wilhelmsen Ships Serv.*, No. CIV.A. 13-6057, 2015 WL 1020660, at *6 (E.D. Pa. Mar. 9, 2015). But that case involved a summary judgment ruling on the issue of reasonable accommodation, not a relevance

7

determination on a discovery motion.  Second, Mr. Imel has not limited his claims to Forte's decision to terminate his employment.  Although Mr. Imel argues that this case is a challenge to a strict attendance policy resulting in termination for absences caused by a disability, Mr. Imel's complaint is broader.   Mr. Imel also asserts an ADA violation based on Forte's failure to reinstate Mr. Imel after learning of his disability, and so it would appear that the medical records would be relevant for *at least* determining whether Mr. Imel was even able to perform the essential functions of the job, with or without reasonable accommodation, at the time he requested reinstatement.  (*See* ECF No. 1, ¶ 36.)  Count 2 of Mr. Imel's complaint pleads a retaliation claim based on Forte's failure to rehire Mr. Imel even though he was a qualified individual who continued to apply for openings with Forte and, again, the medical records could be relevant for determining if Mr. Imel was able to work during that period.  (*See id.* at ¶¶ 37-40.)

     Mr. Imel also addresses each of Forte's proffered statements of relevance.  He argues that Forte does not require his medical records to determine whether he is disabled because loss of his hand has been established.  But the court understands Forte's argument not necessarily as disputing the injury itself but attempting to discover whether Mr. Imel reasonably could have complied with the company attendance policy by calling in during days in question.  Mr. Imel also argues that the medical records are not necessary to prove the timing of Mr. Imel's injury because Forte already has other evidence going to the timing, including police records, ER records, photos, and medical airlift and transport records.  But the fact that a party may have other evidence that goes to the same issue does not render irrelevant an RFP seeking potentially overlapping information.  Moreover, Forte's statement of relevance is more than simply the timing of Mr. Imel's injury; again, it goes to his capacity to comply with the company attendance policy.  Mr. Imel also contends that his SSDI application is not a justification for full access to his medical records

because Mr. Imel has agreed to provide his SSDI application. But, again, this is too narrow a view of relevance. That Mr. Imel has already produced relevant information does not render other responsive documents irrelevant.

Indeed, the fact that Mr. Imel produced some responsive documents—albeit many highly redacted or partially produced—would suggest that he agrees that at least some of the records are relevant for at least some purpose. For these reasons, the court finds Mr. Imel has not carried his burden to support his relevance objection, and so the court overrules it as it pertains to his medical records. The court separately addresses his mental health records below.

**IV.    THE RELEVANCE OF MR. IMEL'S MENTAL HEALTH RECORDS**

Mr. Imel's mental health records are also responsive to the same RFPs discussed above. Mr. Imel's complaint does not specify that he seeks emotional-distress damages. (ECF No. 1, at 6.) Rather, he pleads that he seeks compensatory damages generally, but, during a discovery conference with the court on June 3 and again in follow-up communications between counsel on June 5, Mr. Imel's counsel clarified that he was making a claim for "garden-variety" emotional distress as part of his compensatory damages. (ECF No. 32-3, at 2.) The parties dispute whether and to what extent Mr. Imel's mental health records are discoverable given that Mr. Imel says he does not plan to offer medical testimony or claim a mental health diagnosis resulting from his discharge and will not claim the costs of mental health services as an element of his damages. (ECF No. 36, at 6.)

Forte contends that the "settled rule" in this district is that a plaintiff to an employment suit puts his medical and psychological condition at issue by seeking garden variety emotional distress damages. Although Forte essentially advances a bright-line rule for production of mental health records when a plaintiff has alleged garden variety emotional distress, the undersigned disagrees

that one exists.  The cases Forte relies on involve individual determinations based on the facts before those judges.  *See Carter v. Spirit Aerosystems, Inc.*, No. 16-1350-EFM-GEB, 2018 WL 6249991, at *2 (D. Kan. Nov. 29, 2018) (ruling on multiple motions including denying a *pro se* plaintiff's motion to quash and noting that his medical condition and his "significant demand for emotional distress damages" were issues in the case); *Wooten v. Certainteed Corp.*, No. 08-2508-CM, 2009 WL 2407715, at *1 (D. Kan. Aug. 4, 2009) (finding a Title VII plaintiff's medical records and medical information were relevant to his claim for emotional-distress damages and noting that plaintiff had conceded that his records were not "completely irrelevant"); *Owens v. Sprint/United Mgmt. Co.*, 221 F.R.D. 657, 659–60 (D. Kan. 2004) (finding medical and psychological records were relevant to a  plaintiff's claim for garden variety emotional distress damages and specifically noting the plaintiff had given prior deposition testimony that she began taking an anti-depressant for mood swings as the result of menopause); *Garrett v. Sprint PCS*, No. 00-2583-KHV, 2002 WL 181364, at *2 (D. Kan. Jan. 31, 2002) (finding interrogatories and RFPs sought information relevant to plaintiff's damages for mental anguish).  While these cases have persuasive value, they do not necessarily compel the same result and do not alter the burdens or determinations the court must made on a motion to compel—namely, that the requested discovery appears relevant to the claims or defenses *in this case*.

      The court understands Forte's position to be that Mr. Imel's mental health records are relevant to both causation and the extent of his emotional distress.  Without knowing the exact contours of Mr. Imel's damages claim because it has only been asserted at a discovery conference and in follow-up Golden Rule correspondence between counsel, the undersigned agrees with Forte that the records appear relevant, and so Mr. Imel bears the burden to support his relevance objection.

Mr. Imel argues that there is case law that supports Forte's position and case law that cuts it. Essentially, Mr. Imel attempts to recast this dispute as a determination of whether Mr. Imel has put his medical condition "at issue" or "in controversy," but these standards do not bear on a pure relevance determination. For example, Mr. Imel relies on a line of a case from this district finding that a plaintiff asserting a garden variety emotional distress claim does not put his mental condition "in controversy" to justify a FED. R. CIV. P. 35 exam. *See, e.g.*, *Fergus v. Faith Home Healthcare, Inc.*, No. 218CV02330JWLTJJ, 2019 WL 1101280, at *2 (D. Kan. Mar. 8, 2019); *Kankam v. Univ. of Kan. Hosp. Auth.*, No. 07-2554-KHV, 2008 WL 4369315, at *3 (D. Kan. Sept. 23, 2008); *Greenhorn v. Marriott Int'l, Inc.*, 216 F.R.D. 649, 650 (D. Kan. 2003). These cases are not instructive. For one, on a motion for a Rule 35 exam, the *movant* bears the burden of showing the plaintiff's mental condition is "in controversy" and that "good cause" exists, within the meaning of the rule. That standard is not the same as a relevance determination on a motion to compel—where the objecting party bears the burden to support the objections if the discovery appears relevant. *See Kankam*, No. 07-2554-KHV, 2008 WL 4369315, at *3 ("Rule 35 is consciously designed to be somewhat restrictive to guard against the use of requests for mental examinations as a tool for harassment, intimidation or delay in what courts have described as 'garden variety' cases."). The fact that a claim for garden variety emotional distress might not rise to a level justifying a Rule 35 exam does not mean that any other discovery on the issue is irrelevant.[1]

---

[1] Mr. Imel also relies on *Tilley v. Equifax Information Services* as an example of a case in which a magistrate judge held that the plaintiff as not required to produce medical records. 245 F.R.D. 717, 719 (D. Kan. 2007). But, in *Tilley*, the plaintiff had withdrawn her claim for mental and emotional pain and anguish. *Id.* And while she maintained her claim for damages for humiliation, she represented that she never sought medical treatment for humiliation and had already produced all documents related to that damages claim. *Id.* ("Under this unusual set of facts, the court finds that the medical records sought by defendant through the requests or by medical authorizations are not *reasonably* calculated to lead to the discovery of admissible evidence related to plaintiff's

11

Mr. Imel also argues that many of the cases Forte relies on were issued before 2015, the year that Rule 26 underwent significant amendments that included changes to the scope of discovery. The 2015 amendment to Rule 26(b) deleted the phrase "reasonably calculated to lead to the discovery of admissible evidence" because it had the potential to "swallow any other limitation." FED. R. CIV. P. 26(b)(1) advisory committee notes to 2015 amendment. In other words, the amendment focused the relevance determination on the claims or defenses in the case. *See Landry*, 323 F.R.D. at 377 (explaining the history of Rule 26(b)(1) and noting that, "The rule change signals to the court that it has the authority to confine discovery to the claims and defenses asserted in the pleadings, and signals to the parties that they have no entitlement to discovery to develop new claims or defenses that are not already identified in the pleadings").

But Mr. Imel offers no explanation as to how the 2015 amendments effectively narrow the scope of discovery to render mental health records irrelevant to a claim for emotional distress damages. Indeed, other courts have found post-2015 that this type of information remains relevant when a plaintiff claims emotional distress damages. *See, e.g., Williams v. Cty. of San Diego*, No. 17CV00815MMAJLB, 2020 WL 2991515, at *4 (S.D. Cal. June 3, 2020) ("In defending against Plaintiffs' damages claims, Defendant is entitled to show that 'other factors' contributed to Plaintiffs' emotional distress."); *Pajak v. Under Armour, Inc.*, No. 1:19-CV-160, 2020 WL 265205, at *4–*5 (N.D.W. Va. Jan. 17, 2020) (noting the plaintiff was not claiming to have incurred any medical or mental health treatment as a result of the termination or planning to call witnesses or present medical bills; nevertheless, defendants were entitled to production of plaintiff's medical records "to determine if any prior event may affect her demand for damages").

---

claim of damages for humiliation and, therefore, are not relevant."). In contrast, Mr. Imel has not limited his emotional distress damages.

This argument is insufficient to show that the records do not come within the scope of discovery as defined by Rule 26(b)(1).

Mr. Imel makes additional statements contending that he has not put his private psychological records "at issue," but that type of argument would bear on a psychotherapist-patient privilege objection. *See generally Wright v. Martinez*, No. 2:18-CV-01126-WJ-KRS, 2019 WL 4932849, at *3 (D.N.M. Oct. 7, 2019) (describing the differing approaches to determining whether a plaintiff has placed protected information at issue by making it relevant to an emotional distress claim and expressing doubt that the Tenth Circuit would find no waiver for garden variety emotional distress, noting the difficulty in defining "garden variety"). Unlike the cases cited by Mr. Imel, in this case, Mr. Imel did not timely assert any such privilege objection. Mr. Imel does not even attempt to belatedly assert such a privilege objection in connection with the current motion. Consequently, no such psychotherapist-patient privilege objection is before the court.

For example, Mr. Imel cites *Kublik v. Central Michigan University Board of Trustees* for its statement that the minority view is that a claim for garden variety emotion distress puts a plaintiff's mental state at issue. No. 15-CV-12055, 2016 WL 4425174, at *3 (E.D. Mich. Aug. 22, 2016). But the *Kublik* court was considering the discoverability of the records in light of the psychotherapist-patient privilege. *Id.* at *4. The court did not find the records would be irrelevant to the claim for emotional distress damages. The fact that Mr. Imel's records may theoretically be protected under a different legal doctrine does not satisfy Mr. Imel's burden to support his relevance objection on a motion to compel. For these reasons, the court overrules the objection and grants Forte's motion as it pertains to mental health records responsive to these RFPs.

## V.     THE RELEVANCE OF MR. IMEL'S BANK RECORDS

RFP No. 27 seeks production of Mr. Imel's bank statements, deposit slips, or receipts reflecting deposits to any bank accounts Mr. Imel maintained either individually or jointly. Forte contends that the documents are relevant for two reasons. First, Forte contends that evidence of income or deposits is relevant to its failure-to-mitigate defense. Second, Forte contends that the documents are necessary to refute Mr. Imel's anticipated testimony and counsel's attempts to portray Mr. Imel as "an extremely poor individual." The court agrees that documents could be relevant to the issue of mitigation, but Mr. Imel's status as "an extremely poor individual" and Forte's concern about his anticipated testimony on the issue is speculative and does not demonstrate relevance to any particular claim or defense in the case. However, because the court finds that Forte has made the threshold showing of relevance as it pertains to mitigation, Mr. Imel bears the burden to support his relevance objection.

Mr. Imel notes that he has already produced W-2s and 1099s since his termination. He has also produced cards referencing his receipt of public assistance and has provided sworn interrogatories stating that he has not held a job as an employee since Forte fired him. Because of this, Mr. Imel contends that discovery of his bank records is too invasive in light of the other documents already provided. The court agrees that the bank records likely encompass a significant amount of information that is not relevant to the claims or defenses in this case, but the court also agrees with Forte that the records would enable Forte to evaluate whether Mr. Imel had any unreported income. In other words, Forte is not required to take Mr. Imel's word that he only worked two odd jobs and that his only income has already been disclosed through his interrogatory response and the other documents provided. Under certain circumstances, overlapping information may render a discovery request disproportionate, unreasonably cumulative, or unduly

burdensome, but it does not render the information irrelevant, and Mr. Imel's relevance objection is the only objection before the court. To that end, the court largely overrules Mr. Imel's relevance objection with the exception that he may redact the amount of any withdrawals and the entity or person to whom the withdrawals were made. However, he may not redact information showing whether the line item is a deposit or a withdrawal.

## VI.    CONCLUSION

The court overrules Mr. Imel's relevance objection to RFP Nos. 2, 3, 6, and 8 and overrules in part and sustains in part his relevance objection as to RFP No. 27. Mr. Imel shall produce responsive documents by **July 13, 2020**. He may redact the deposit information on documents responsive to RFP No. 27, as explained above. He must produce unredacted copies of documents responsive to RFP Nos. 2, 3, 6, and 8, including unredacted copies of redacted responsive documents already produced.

Forte also requests that the court compel Mr. Imel to sign authorizations for the release of his medical records in the event he does not have responsive documents in his possession. That request is denied. Among other reasons, the request is speculative and premature. Mr. Imel's counsel has indicated she is willing to obtain other responsive documents to the extent Mr. Imel does not have them in his immediate possession. The undersigned has no reason to believe that plaintiff's counsel would not work with defense counsel to coordinate production of documents responsive to these RFPs that are within Mr. Imel's possession, custody, or control within the meaning of FED. R. CIV. P. 34(a)(1).

**IT IS THEREFORE ORDERED** that Defendant's Motion to Compel (ECF No. 31) is granted in part and denied in part.

**IT IS SO ORDERED.**

Dated June 30, 2020, at Topeka, Kansas.

s/ Angel D. Mitchell  
Angel D. Mitchell  
U.S. Magistrate Judge